is 2023-60368 Willie Pohl v. James K. Shearer, individually and officially, of the FBI. Mr. Brown, you may proceed, sir. Good morning, and may it please the Court. My name is Howard Brown, Brown Litigation Group, and on behalf of the plaintiff appellate Willie Pohl, and we appreciate the opportunity to be before you this morning. It has been the law of the land for over 50 years that a federal agent can be liable by way of a direct cause of action under the Fourth Amendment. That ruling was provided in the Bivens case. Unless or until this Court or the U.S. Supreme Court says otherwise, the appellant, Mr. Willie Pohl, has a viable, valid cause of action for the alleged constitutional violations that occurred at his home on April the 4th, 2019. The fact that this incident occurred at Mr. Pohl's home, we submit, greatly distinguishes this case from many of the cases cited in the briefs in this case. As this Court is likely aware, the Bivens case held that there was a direct cause of action under the United States Constitution, and in that case, federal agents entered the claimant's home, number one, number two, without a warrant or probable cause, and they detained him. Those are three of the main things, and then subsequently in that case, they took him to a federal courthouse where he alleged he was strip-searched at a federal courthouse. We would submit that Mr. Pohl's case is very parallel to the Bivens case for those reasons. In contrast, Your Honors, we would submit that many of the cases cited in the briefs are quite different where the courts have refused to allow a Bivens-type claim to proceed. For example, in the Correctional Services Court v. Malesko case, in that case, a litigant tried to bring such a type of cause of action against a private corporation operating a the Bureau of Prisons. That's not what we're talking about here. Likewise, in the Bush v. Lucas case, the Court declined to allow a Bivens-type remedy in a context where a litigant was trying to sue government officials concerning alleged First Amendment violations. Not what we're talking about here. Mr. Brown? Yes, ma'am. Admittedly, this case is more similar to Bivens than some of the other cases that we see, but we have been cautioned by the Supreme Court not to extend Bivens, and you're aware of that case law that the Supreme Court has cautioned us on that. There are some factual differences. Can you address why they don't matter or how we are to deal with that? Yes, Your Honor. Your Honor, the district court and esteemed opposing counsel have done a great job in drilling down on differences, and I believe some of the differences that have been highlighted by the district court and the government are that the agents in the Bivens case were not FBI agents. I believe they were from a different agency, number one. Number two, that Mr. Willie Pohl, the appellant here, was not manacled in front of his family, and we would acknowledge that, Your Honor. However, we would submit that those are distinctions that should not foreclose Mr. Pohl's case. At the risk of oversimplifying, Your Honors, we would submit that a federal agent is a federal agent, be it Homeland Security, Federal Bureau of Investigations, what have you. But what do we do with the language in the Ziegler case, for example, from the Supreme Court? We have to do the best we can to interpret the Supreme Court, and it says that a case might differ because of the rank of the officers involved, that something as small as that. So what do we do with that, and are you aware of any cases, recent cases, that have allowed a Bivens case where there are some factual differences? Your Honor, in all candor to the Court, I am not aware of a recent case where anybody brought a successful Bivens-type claim against a federal officer. However, that being said, I'm not aware, and I'm subject to being corrected, obviously, by this Honorable Court. I'm not aware of a case where a federal agent came to someone's home, kicked in their door, or otherwise gained entry without consent, without a warrant, and allegedly violated their right to privacy in the sense of them being naked outside. I'm not aware of a case like that, and we would simply submit, Your Honor, that those type of factors make this case slightly different in that regard, and we are very, very mindful of the headwinds, if you will, concerning this claim, but we would simply submit, Your Honor, that when you go home at night where you live and where you pay rent, and when you lock that door, that ought to mean something. Federal agent or no federal agent, and I believe that's what we're bringing to the Court, and I believe that's what Mr. Willie Pohl is asking this Court to consider. Does that still mean something in the United States of America or not, as it applies to no arrest warrant, no search warrant, that we allege? Now, and I believe it's in the pleadings, so I don't think I'm going outside of the pleadings, Your Honor. At some point during the litigation, and at some point previously, a TUI request was submitted to the government, and no response was received concerning that request, and had we gotten a response to that request, maybe we could have seen whether or not there was a search warrant or not, or what the basis was, and maybe Mr. Pohl could have gotten some type of satisfaction as to what was going on, but at this point, all we know is at 630 in the morning, while he was trying to take a shower, his door gets kicked in, and he gets pulled outside at the point of high-powered rifles. This will be with him for the rest of his life, whether he gets relief from this Court or not, and we would submit, Your Honor, that at this point, we think we have pled a viable claim as it relates to the individual capacity claims against this federal officer. We believe we've alleged enough in the pleadings. There was more than one officer there, but concerning the officer that we have been able to identify and name, and we allege serve, as it relates to this officer, we've alleged that this officer participated, and we've made other allegations such that it's not just a, well, he may have been a supervisor and may have been involved some kind of way. We believe there's enough specificity concerning his actions that we ought to be able to survive a Rule 12b6 motion to dismiss, and if we're able to get into discovery, try to figure out who else was there, and try to get to the bottom of something, this shouldn't happen again, and we thank the Court, again, for the opportunity to be here, and we would like to reserve the rest of our time for rebuttal. I do have a question about service. Yes, Your Honor. After the first complaint was served on Mr. Scheer, he filed a motion to dismiss, claiming improper service and pointing out the defects in service. In response, there was an amended complaint, but there does not seem to be in the record any effort to serve the United States, which would be appropriate in order to effect proper service on an officer of the United States. Can you address the service issue? Yes, Your Honor. Our position on the service issue, Your Honor, we can see that when the original complaint was filed, we served James Scherer through counsel, I believe, who graciously agreed, or the Department of Justice, I should say, who graciously agreed to accept service for him, and then he answered, he filed a motion to dismiss, and we can see that we did not serve the U.S. Attorney's Office. However, Your Honor, we contend that once Scherer filed a motion to dismiss the original complaint under the circumstances where he alone was served and not the U.S. Attorney's Office, and then once we amended the complaint and filed it, and we contend served the U.S. Attorney's Office, then we contend that they had a duty to respond, given that they filed a motion to dismiss the original complaint under those circumstances. And so, our position is once you have served the original complaint or allegedly served the original complaint, and there's an answer to it, and then you amend, our contention and position is that counsel for the defendant has a duty to respond to it, and that wasn't done here. A motion to dismiss is not an answer, correct? That's correct, Your Honor. So are you conflating notice with proper service of process? Yes. What we are submitting to the Court, Your Honor, is that they had a duty to, if they weren't going to answer, file a motion or some other response to pleading. Do you have any case law that supports your position that you were not required to fully complete service? As I stand here this morning, I do not, Your Honor. I can only submit to the Court that in the many years that I have practiced, when an amended complaint has been filed, we never serve the defendant, but they typically get answered through their counsel, but I know that's not case law. But your position is that by filing a motion dismiss in lieu of an answer and not reserving any rights to be served or claiming that you weren't served, that that was an appearance, right? Is that your position, that that was an appearance, the filings of the motions to dismiss? Yes. Yes, Your Honor. Thank you. Thank you, Your Honors, very much. Can you start with those motions to dismiss? Yes, Your Honor. Did they reserve any sort of right on this about service, or were they just straight-up motions to dismiss? So the motion to dismiss did raise the allegation that service was improper, Your Honor, so it did raise insufficiency of office. And it raised that first before anything else? To my recollection, yes, Your Honor, that was the first thing that was raised. May it please the Court, I didn't get a chance to see that. And so the DOJ accepted service on his personal behalf, but not on his official? That's not quite accurate, Your Honor. What is accurate? So the Department of Justice did not accept service on behalf of Mr. Shearer. The Federal Bureau of Investigation, the acting Chief Division Counsel at the time, agreed — or Mr. Shearer himself agreed for the Chief Division Counsel of the FBI to accept service on behalf of himself only. So notice the complaint in some — But he was served individually? He was served individually. That's correct. So the Department of Justice did not accept service on behalf of the U.S. Attorney's Office or the Attorney General's Office, Your Honor. So it was only the FBI that accepted service of Mr. Shearer's application, and that was via email. And that was after multiple attempts by Mr. Pohl to serve Mr. Shearer, and he wasn't able to do that. So that's why the FBI went through and accepted service on his behalf. What do you think needed to be done to serve him in his official capacity? So Rule 4 of the Federal Rules of Civil Procedure clearly lays out what needed to be done for proper service of Mr. Shearer, both in his individual and official capacity. Of course, Your Honors know that that means that Mr. Shearer had to be served individually as well as the United States Attorney's Office and the U.S. Attorney General's Office. The U.S. Attorney's Office and the Attorney General were never served in this case, Your Honor. There was never even an attempt to make service on either of those entities as Your Honor stated. Was there a request? What's that, Your Honor? Was there a request? Was there a request? To the U.S. Attorney's Office or the DOJ or someone? There was no request to serve them, Your Honor. There was only . . . there wasn't even a request to serve Shearer. In that case, Shearer . . . Well, Shearer's already been served. Right. There was no request to the U.S. Attorney's Office or the Attorney General's Office, Your Honor. Why did they go into this house? Was there a warrant of some sort? Was it a mistaken identity? Why did they go into this house? I can go into the factual aspects of this case. Please do, Your Honor. However, I will note that discovery has not been conducted as to what happened in the actual case itself, so we sought dismissal based on just the facial allegations. Why did they go into this house? Sure, Your Honor. So, the background of this case is that this was . . . there was a person that the FBI was looking for who was involved in several different drug transactions. Does this person have any relationship to Mr. Pohl? So, there were two addresses that they found. So, this was . . . the Memphis FBI had come down. There were several teams that were working on this together. There were two addresses that were located for where this particular person might be. There was surveillance that was being conducted. So, the address that Mr. Pohl was at was one of the addresses where they had seen . . . I believe it was the target's girlfriend had been coming in and out of there, so they had reason to believe that he might be at that address. So, the FBI did have a warrant in this case, Your Honor. So, it wasn't a wrong address? It was the correct address? They had a warrant for this address. There were two separate addresses, and both of these addresses were addresses where they suspected this individual might be located. So, when they entered the home on that specific morning, they had cause to believe that there might be a drug dealer at that location. It turned out that that was not the case, but they had a reasonable warrant and a reasonable belief that there might be someone there. So, in the duty of . . . in the course of their duty, in the course of acting as FBI agents, they went to his home and investigated the home itself. And Your Honor, I think that jumps into some of the major differences that we have between this case and Bivens. Your opposing counsel said that this case is very parallel and also said that there were not enough distinctions in this case. But, do you want to use those as distinctions? Because you didn't even want to tell them to us. So, I don't know if . . . can you rely on those as the distinctions or not? So, there are distinctions that can be made, even just looking at the facts of the case as the plaintiff or the appellant has pled them, Your Honor. But, looking at the bigger picture, the case law that's surrounding any differences, the Supreme Court and the Fifth Circuit has noted that any difference, however slight it might be, is a difference that creates a new context under Bivens, Your Honors. In this particular case, we have differences. But, going back to the very parallel language, if I can for a second, the Court acknowledged in Egbert v. Bouley, this is Supreme Court 2022, that the facts of those two cases between Bivens and Egbert were very similar. They noted that it was almost parallel circumstances, but . . . and the mechanism of injury was also very similar. But, the Court found that that was not enough to support an extension of a Bivens remedy. Opposing counsel also noted that, you know, it shouldn't make a difference if it's a different agency. Like, that's a very small difference. But, the courts have noted that that is a difference significant enough to find that a new context has been found. Again, in Olivia v. Neibar, this is the Fifth Circuit case from 2020, the Court found, quote, that different conduct by different officers from a different agency is enough to find a meaningful difference to create a new context. And here, Your Honors, we do have a different agency. We have different officers. We have, in this case, it's FBI officer, not Federal Bureau of Narcotics officers. If it becomes that pretty much your name has to be Bivens and it has to be on that exact day to have a Bivens claim, assume arguendo, I'm speaking a little hyperbolically. Not much. I mean, how about they just overrule it? Just slightly. And they haven't yet, for whatever reason, overruled it, but it has to be exactly pinpoint precise in exactly the same town, by exactly the same rank of agent, by exactly the same, and it has to be the exact same family members there, and it has to be exactly that. What recourse is there for people from severe government overreach, which I'm not saying occurred in this case. We don't know whether that occurred into their privacy of their homes without a warrant. Yes, Your Honor. So I think two things in this matter. So one is that there is a cause of action. Like, Bivens has created an implied cause of action for Fourth Amendment claims. It doesn't have to, like you're saying, it doesn't have to look the exact same, but the courts have been extremely— It does have to be exactly the same. You were arguing it pretty much has to be the same. Yes, Your Honor. It does have to be exactly the same, but the courts have been— So what other resort do people have? Recourse do people have? So there are other remedies. There are alternative remedies that Congress has made available. In this particular case, the plaintiff could have gone through the Federal Tort Claims Act, through the administrative procedures, to find recourse for these actions. And the Supreme Court, in Egbert v. Boulay, again noted that it— You don't have a constitutional remedy for officers breaking into your home for no good reason. Is that right? There's no constitutional remedy at this point, unless your name is Bivens? Unless the facts of the case are almost parallel to Bivens, or to Passman, or to Carlson v. Green, then that's accurate, Your Honor. There is no recourse. And the Supreme Court has been very cautious to extend Bivens. It's been noted that, in Egbert again, that if the court were to decide Bivens today, they would decline to discover any implied causes of action in the Constitution. So, again, like you said, the court has been extremely cautious about extending Bivens. And in this case, there is an alternative remedial action that the plaintiff— The FTCA? Yes, Your Honor, the FTCA. And the general—I guess the focus that this comes down to—and, again, Egbert has looked at this again—it's noted that whether or not to extend a Bivens remedy comes down to one single question, and that's whether or not there is a reason to think that Congress might be better equipped to create a damages remedy. So, it's noted that this is not a role for the judiciary, but it's a role that should be reserved and left for Congress to decide. And so, the court has been hesitant and has declined to extend Bivens, finding that there are new contexts in almost all the cases that we've cited in our briefs, Your Honor. Do you believe that, for all practical purposes, Bivens has been overruled without saying subsolentio? For all practical purposes. Yes, Your Honor. I believe that that is true. The Supreme Court has used very strong language in 2017 in Siglar v. Abbasi and more recently again in Egbert v. Boulay, noting that they wouldn't extend Bivens again today if they had the opportunity to. So, in all practical means, Bivens has not been extended, Your Honor. There is another— It's closer than some cases, though. This is more similar— This is more similar than the ones that we've seen in the past couple of years. It's true, Your Honor. It is more similar. However, there are still meaningful differences that I can point out. So, one being the officers were different, the Federal Bureau of Narcotics and Bivens, and here it's the FBI. Here, there was a search that was conducted and they came into the House not thinking that Mr. Pohl himself was a drug dealer, whereas in Bivens, they believed that the plaintiff himself was a drug dealer. Here, they were just looking for someone who they thought was housed there. And then, additionally, in this case, Mr. Pohl was not manacled. He was not taken to the courthouse. He was not booked. He was not strip searched. None of those facts have been found to be present here. And the Fifth Circuit and the Supreme Court have both noted in multiple cases where those facts are not present, there's not a new context that's been found. Additionally, in this specific case, Mr. Shearer's actions can't be lumped together, and they have been lumped together with the actions of all of the defendants. And that's not what we see in Bivens. That's not what we see in Davis v. Carlson, or Davis v. Passman, or Carlson v. Kareem. Here, it's not enough to just say, oh, Mr. Shearer planned this, or he supervised this. There's no more specific allegations made as to what Mr. Shearer supposedly did in this specific incident. It's not your position that Mr. Shearer went rogue or something, was doing this on his own? No, Your Honor. It's not at all. He did not. And in fact, if we were to get into the facts of this case, Mr. Shearer was not even present at the time of the alleged actions. But that's something that we have not discussed, because we have not gone into the discovery of this matter. But the facts of the case, from the government's perspective, is that Mr. Shearer was not even present at the time of these alleged actions. Another thing that the court, or the opposing counsel, has brought up is a TUI request. He noted that there was no response provided to the TUI request. However, in this specific case, Your Honor, the TUI request was made before discovery had even started, and there was no obligation on the part of the government to respond to a subpoena for information when discovery would have been the proper means for Mr. Pohl to have requested that information. And, Your Honor, I wanted to go back to the arguments about the motion to set aside default for just a few minutes. Good cause did exist in this case to set aside the entry of default, and that was properly done, and that should be affirmed by this Court, because Mr. Pohl never properly served the U.S. Attorney's Office or the Attorney General. And that's something that we have previously discussed, but that ruling should be affirmed based on the reasoning that the defendant had no duty to answer the suit, and he didn't need to answer it until service had been perfected. And in this case, service was not perfected, and Mr. Shearer had no duty to respond to the motion to dismiss. If Your Honors don't have any other further questions, I will concede my time. Thank you. Thank you, Counsel. Mr. Brown, you save time for rebuttal. May it please the Court again. Your Honor, I'd like to briefly address the default issue first, if I may. I will submit to the Court that the rules are quite clear, that I believe it's Rule 55, Federal Rules of Civil Procedure, that before a defendant can move to dismiss, if there is a default issue, they have to first have the default set aside or vacated before they can move to dismiss. In this case, it was done at the same time. And if you look at the district court's order, with all due respect, it seems that the district court essentially ruled that, yes, Defendant Shearer waited almost a month before moving to set aside the default, and the motion to set aside could be denied on that basis. But however, it looks like it's not a really good case on the merits, and so I'm just going to set aside the default. And I don't mean to be disrespectful of the district court, I really don't. But it seemed that the court ruled that I'm going to set aside the default and grant the motion to dismiss. And it's almost like the court let the dismissal issue guide the default issue, and we would just submit that the rules don't intend for it to be addressed that way. And that's the issue that we have with the setting aside of the default. Your Honor, Your Honors, I've learned more today about this case than I've learned in about two years, and I want to thank the court for that. There was an argument made in response to the court's question, why did they go into the house, that they saw a girl going in and out of Mr. Pohl's house connected with a drug dealer. None of this is in the record in the court below, none of it. We're here on a Rule 12 motion to dismiss. If the court sends it back, maybe we'll get trounced in the lower court. But on a 12b6 motion to dismiss, we believe that the order should be set aside. Mr. Pohl is asking this court about accountability of federal officers. There may be other remedies, and I wish I could briefly give this court a great recitation on why the remedies mentioned by opposing counsel are not adequate congressional remedies, tort claims act remedies. The Fourth Amendment is the remedy that we're asking this court about, and Mr. Pohl is asking this court what's left. We thank the court. Thank you, Mr. Brown. We have your argument, we have the argument of Ms. Kingley.